IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEAN KILGORE, Executrix of the Estate of VICTOR B. KILGORE, Deceased, and Widow in her Own Right,** | : : : : : | CONSOLIDATED UNDER MDL 875 Transferred from:    Court of Common Pleas, Philadelphia |
| Plaintiffs, | : : | County Docket No.: 1306-00881 |
| vs. | : : | **E.D. CIVIL ACTION NO.** |
| **CERTAINTEED CORPORATION**, et al., | : : : | **13-cv-4029-ER** |
| Defendants. | : | |

**DEFENDANT CERTAINTEED CORPORATION'S REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant CertainTeed Corporation ("CertainTeed") respectfully submits this Reply Brief in Support of its Motion for Summary Judgment.

As demonstrated by CertainTeed in its original moving papers, plaintiff has adduced no factual evidence to support her contention that Victor Kilgore ever worked with or was around an *asbestos-containing* product distributed or supplied by CertainTeed or that, even if he were around such a product, exposure to asbestos from that product occurred with sufficient frequency to have been a cause of his disease. Plaintiff's opposition utterly fails to remedy either deficiency. Mr. Kilgore's testimony and the relevant facts of this case remain unchanged and undisputed:

- Mr. Kilgore recalled using three-tab asphalt shingles at some point in his career at Aberdeen Proving Ground in Aberdeen, Maryland between 1962 and 1988;

- He understood those shingles were manufactured by CertainTeed;

- He was unable to recall when during that 26-year period he might have encountered CertainTeed roofing shingles, or on how many occasions that may have occurred;

- He testified that he did not know whether any of the CertainTeed shingles he recalled contained asbestos.

- As set forth in the affidavit of Charles Blakinger supporting CertainTeed's original moving papers, except for a short time in 1973 and 1974, all of the three-tab asphalt roofing shingles CertainTeed manufactured or sold were non-asbestos products;

- During the 1973 to 1974 period, the asbestos-containing three-tab asphalt shingles were manufactured at plants that did not serve the Maryland market, and

- Even during the 1973 to 1974 period, the vast majority of three-tab asphalt shingles manufactured by CertainTeed did not contain asbestos.

Jurisdictions around the country recognize the principle that "[w]hen the record reveals that a defendant manufactured both asbestos-containing and non asbestos-containing versions of a product during the time period of alleged exposure, in the absence of evidence directly or circumstantially linking the plaintiff to the asbestos-containing product, the Court cannot draw the inference of exposure and summary judgment on product nexus must be granted." *Stigliano v. Westinghouse*, No. 05C-06-263, 2006 WL 3026171, at *1 (Del. Super. Oct. 18, 2006); *see also Tarzia v. American Standard*, 952 A.2d 1170, 1174 (Pa. Super. Ct. 2008); *Timmons v. Bondex International, Inc.*, No. 06C-10-108, 2008 WL 2690313, at *1 (Del. Super. May 15, 2008); *Adamson v. Gen. Elec. Co.*, 694 S.E.2d 363, 369-70 (Ga. Ct. App. 2010). This Court should not hesitate to do the same thing.

Plaintiff's Response does nothing more than invite the Court to fill in the gaps in the evidence with sheer speculation, and in so doing relies on mischaracterizations of the record.

Ignoring Mr. Kilgore's inability to say whether any CertainTeed shingles he might have worked with contained asbestos, plaintiff turns instead to an excerpt of discovery responses from CertainTeed from an unrelated case, demonstrating nothing more than what was established in the Blakinger affidavit: that CertainTeed made a limited number of asbestos-containing asphalt shingles during an exceedingly small portion of Mr. Kilgore's career. However, during that same period, the vast majority of CertainTeed's asphalt shingles did not contain asbestos.

Plaintiff's arguments regarding exposure and causation are not saved by her citation to *Burton v Johns Manville*, 613 F. Supp. 91, 93 (W.D. Pa. 1988). In that case, plaintiff – in the absence of testimony from a percipient witness regarding the identities of the products he used – supported his allegations that he frequently used brake linings manufactured by the defendant by presenting evidence at trial that defendant had supplied 98% of brake linings used at the facility where plaintiff worked. The instant case presents an almost diametrically opposite factual record to that in *Burton*: Mr. Kilgore testified that he worked with and around "many different brands" of roofing shingles – so many, in fact, that he could not recall all of the names. (Exhibit A at 96:2-14; 186:16-20.)

Finally, plaintiff attempts to avoid summary judgment by, in effect, changing the standard governing proof of causation in this case by invoking Maryland law. However, the decision Plaintiff cites, *Dixon v. Ford*, confirms that Maryland adheres to the same "frequency, regularity and proximity" approach to exposure employed in Pennsylvania. 433 Md. 137, 150-51, 70 A.3d 328, 335-36 (2013) (citing *Scapa v. Saville*, 418 Md. 496, 503, 16 A.3d 159, 163 (2011)). In fact, the *Dixon* court also noted that, under Maryland law,

> in determining whether the conduct qualifies as a substantial factor, the court must consider, among other things, the nature of the product, the frequency of its use, the proximity, in distance and time, of a plaintiff to the use of the product, and the regularity of the exposure of that plaintiff to the use of the product.

*Id*. at 150, 70 A.3d at 335 (citing *Eagle-Picher v. Balbos*, 326 Md. 179, 210, 604 A.2d 445, 460 (1992)); *see also Braxton v. ACandS, Inc.*, MDL 875, Civ. No. 93-03466 (E.D. Pa. Dec. 9, 2010) (applying frequency, regularity and proximity test in granting defendant's motion for summary judgment). Plaintiff fails to explain how this standard differs from Pennsylvania's. Moreover, *Dixon* nowhere suggests that a jury in a Maryland asbestos case might properly conclude that a defendant was the cause of a plaintiff's injury where – as here – plaintiff has not come forward with a shred of evidence that the CertainTeed product Mr. Kilgore allegedly encountered even contained asbestos. Plaintiff's "proof" no more satisfies Maryland's causation standard than it does Pennsylvania's.

    For the foregoing reasons and those in its original motion papers, CertainTeed is entitled to summary judgment.

                                                    Respectfully submitted,

Dated: November 3, 2014                   **WILBRAHAM, LAWLER & BUBA**

                                        By: /s/ Michael J. Block, Esq.
                                             Michael J. Block, Esq.
                                             1818 Market Street, Suite 3100
                                             Philadelphia, PA  19103
                                             TEL (215) 564-4141
                                             FAX (215) 564-4385
                                             EMAIL: mjb@wlbdeflaw.com
                                             Attorneys for CertainTeed Corporation

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on November 3, 2014 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by the CM/ECF.

              By:/s/ Michael J. Block, Esq._____
                Michael J. Block, Esq.
                1818 Market Street, Suite 3100
                Philadelphia, PA  19103
                TEL (215) 564-4141
                FAX (215) 564-4385
                EMAIL: mjb@wlbdeflaw.com
                Attorney for CertainTeed Corporation

# EXHIBIT A

```
            IN THE COURT OF COMMON PLEAS
       OF PHILADELPHIA COUNTY, PENNSYLVANIA
                     - - -
VICTOR B. KILGORE &      :   JUNE TERM, 2013
JEAN KILGORE, h/w        :
     Plaintiffs          :
                         :
        vs.              :
                         :
ALLEN-BRADLEY COMPANY,   :
et al                    :
     Defendants          :   NO. 0881
                     - - -
             Friday, June 28, 2013
                     - - -
             Videotape Deposition of VICTOR B.
KILGORE, taken at Marriott City Center, 500
Fayetteville Street, Raleigh, North Carolina,
commencing at 10:00 a.m., before Janice L.
Welsh, Court Reporter and Notary Public; in
and for the Commonwealth of Pennsylvania.
                     * * *
```

     VERITEXT NATIONAL COURT REPORTING COMPANY
                MID-ATLANTIC REGION
           1801 Market Street - Suite 1800
           Philadelphia, Pennsylvania 19103

Page 94

```
 1              VICTOR B. KILGORE
 2   the roof coating.  It just wears out.  It just
 3   disappears.
 4   Q.   Just so we're clear, though, you don't
 5   recall ever removing any Georgia Pacific roof
 6   coating at Aberdeen?
 7   A.   No.
 8           MS. LOMBARDO:  Those are all the
 9   questions I have for you.  Thank you very
10   much.
11           VIDEOTAPE OPERATOR:  The time is
12   11:43 a.m.  We're off the record.
13                   - - -
14           (Whereupon a short recess was
15   taken.)
16                   - - -
17           VIDEOTAPE OPERATOR:  The time is
18   11:43 a.m.  We're back on the record.
19                   - - -
20                EXAMINATION
21                   - - -
22   BY MS. ABRAHAM:
23   Q.   Hello, sir.  My name is Anisha Abraham.
24   We spoke a little bit yesterday.  Are you okay
25   to continue?
```

Page 95

```
 1              VICTOR B. KILGORE
 2   A.   Yes.
 3   Q.   I just have a couple of follow-up
 4   questions to ask you just so the record is
 5   clear.  When you had talked about working on
 6   roofs, you had been talking about testimony
 7   generally where you said you worked on roofs
 8   throughout your career, but you can't recall a
 9   specific instance of using CertainTeed on a
10   certain date throughout that time period,
11   correct?
12   A.   Correct.
13   Q.   And you couldn't recall any locations
14   where you had actually applied the CertainTeed
15   three-tabbed asphalt roof shingles at the
16   location at Aberdeen, correct?
17   A.   Correct.
18   Q.   When you had talked about the different
19   products -- when you were applying first you
20   would have to prep the roof so you would
21   remove products, you wouldn't be able to tell
22   the manufacturer of any of those products, say
23   the shingles, that you removed from that roof,
24   correct?
25   A.   That's right.
```

Page 96

```
 1              VICTOR B. KILGORE
 2   Q.   And you also talked about you used a lot
 3   of different manufacturer's products because
 4   the government was trying to spread around
 5   their sales; is that correct?
 6   A.   That's correct.
 7   Q.   If I went through some different
 8   manufacturer's names, do you think that might
 9   help you recall some of the shingle
10   manufacturers?
11   A.   Well, I know there was a lot of
12   manufacturers.  If you gave me a name that
13   sounds familiar -- but I couldn't put it on a
14   product.
15   Q.   Do you recall the name Johns-Manville
16   for shingles?
17   A.   I know they made shingles.
18   Q.   Do you know if they were used at
19   Aberdeen Proving Ground?
20   A.   I couldn't swear to it.
21   Q.   Are you familiar with the name Philip
22   Carey for shingles?
23   A.   That don't ring a bell.
24   Q.   How about the name Celotex?
25   A.   My experience with Celotex, Celotex was
```

Page 97

```
 1              VICTOR B. KILGORE
 2   a fiberboard.
 3   Q.   How about for Flintkote?  Do you
 4   associate them with shingles?
 5   A.   Who?
 6   Q.   Flintkote.
 7   A.   No.  I don't recall that name.
 8   Q.   How about Owens-Corning shingles?
 9   A.   That's a familiar name.
10   Q.   How about GAF?
11   A.   Possibly, but I couldn't put my finger
12   on it.
13   Q.   And the name Ruberoid, do you associate
14   that with shingles?
15   A.   I know they made shingles.
16   Q.   Earlier when we had described the
17   different shingles, you said once again you
18   would not be able to tell the manufacturer of
19   any shingle that you might have removed from a
20   roof, correct?
21   A.   Correct.
22           MS. ABRAHAM:  I'm going to review
23   my notes, but I think that's all the questions
24   I have at this time.  Thank you.
25           MR. PAUL:  Anybody else on the
```

Veritext National Court Reporting
215-241-1000 610-434-8588 1-302-570-0510 877 200-0118 888 777 6690

25 (Pages 94 to 97)

```
               IN THE COURT OF COMMON PLEAS
          OF PHILADELPHIA COUNTY, PENNSYLVANIA
                        - - -
VICTOR B. KILGORE &     :    JUNE TERM, 2013
JEAN KILGORE, h/w       :
      Plaintiffs        :
                        :
         vs.            :
                        :
ALLEN-BRADLEY COMPANY,  :
et al                   :
      Defendants        :    NO. 0881
                        - - -
              Wednesday, June 26, 2013
                        - - -
              Videotape Doscovery Deposition of
VICTOR B. KILGORE, taken at Marriott City
Center, 500 Fayetteville Street, Raleigh,
North Carolina, commencing at 10:00 a.m.,
before Janice L. Welsh, Court Reporter and
Notary Public; in and for the Commonwealth of
Pennsylvania.
                       * * *




     VERITEXT NATIONAL COURT REPORTING COMPANY
                 MID-ATLANTIC REGION
             1801 Market Street - Suite 1800
             Philadelphia, Pennsylvania 19103
```

Page 186

1  VICTOR B. KILGORE
2  with or around in the carpentry unit was
3  sheetrock.
4  A    Yes.
5  Q    Do you remember the trade name or
6  manufacturer of the sheetrock that was used at
7  Aberdeen?
8  A    No.
9  Q    You also mentioned working with or
10 around some roofing material. Two types of
11 material, the hot tar and the three by one
12 shingles. The hot tar, do you remember the
13 manufacturer or brand name of the hot tar
14 material?
15 A    No.
16 Q    Do you remember the manufacturer or
17 brand name of the three in one shingles that
18 were used at Aberdeen?
19 A    Actually no, because they used many
20 different brands
21      MR. PAUL: Do you remember any?
22      THE WITNESS: You can mention
23 famous brands and I could say, yeah, we used
24 that, but I can't picture it.
25 BY MS. SCHWEIZER:

Veritext National Court Reporting
215-241-1000 610-434-8588 1-302-570-0510  877 200-0118 888 777 6690

Page 187

1  VICTOR B. KILGORE
2  Q    So, you can't tell me any particular
3  brands that were used in general at Aberdeen,
4  correct?
5  A    No. I could say CertainTeed because it
6  was very popular, but like I say the
7  government bought every place.
8  Q    Aside from the name CertainTeed, no
9  other ones come to mind?
10 A    No.
11 Q    The last product you mentioned was
12 spackle.
13 A    Yes.
14 Q    Do you know the brand name, trade name,
15 manufacturer name of any spackle that you
16 would work with or around at Aberdeen?
17 A    No. I do know the first spackle I
18 worked with was powder and you had to mix it
19 up yourself, and then later on they progressed
20 to ready mix spackle.
21 Q    Just so I understand it, you said the
22 first one was a powder where you had to mix
23 it?
24 A    Yes. And that would be -- you would get
25 a lot of -- because it was a powder and

Veritext National Court Reporting
215-241-1000 610-434-8588 1-302-570-0510  877 200-0118 888 777 6690

Page 188

1  VICTOR B. KILGORE
2  naturally you would get that off of it.
3  Q    I think that's all the products you
4  mentioned that you worked with or around as
5  part of the carpentry unit. Do you believe
6  that you worked around any other trades that
7  were using asbestos-containing materials?
8  A    Well, during the later part when
9  asbestos became a problem, if the plumbers or
10 somebody was -- or heating people were going
11 to tear out pipes and asbestos, we would go in
12 and frame the area up with two-by-fours and
13 cover it with plastic so it wouldn't escape
14 and go all over the building. But then we had
15 to go back and disassemble that after it was
16 all done.
17 Q    I'm glad you brought that up. I'll ask
18 you a couple of questions about this. What
19 you just testified to, is it fair to say that
20 you would set up the area before others would
21 actually remove any asbestos?
22 A    Right.
23 Q    You said later when asbestos became a
24 problem. When was it that this started to
25 occur?

Veritext National Court Reporting
215-241-1000 610-434-8588 1-302-570-0510  877 200-0118 888 777 6690

Page 189

1  VICTOR B. KILGORE
2  A    I'm going to say somewhere in the later
3  70's, but I'm not sure.
4  Q    Did you ever become aware that -- strike
5  that.
6       What did you mean by asbestos
7  became a problem?
8  A    Well, it's when the lawsuits started, I
9  guess. People being, you know, affected with
10 the asbestos and buildings having asbestos in
11 it, like that. Then we become much more
12 careful after that.
13 Q    When you were doing your job in building
14 the four-by-fours and putting the plastic so
15 nothing would escape, no one was in that area
16 doing any asbestos removal at that time; is
17 that correct?
18 A    No. Not until we finished.
19 Q    Who was coming in to remove the
20 asbestos?
21 A    Well, it depends whether it would be the
22 plumbing or the heating. Whoever it might be,
23 you know, their job to do it.
24 Q    Do you believe these plumbing and
25 heating people were employed by Aberdeen like

Veritext National Court Reporting
215-241-1000 610-434-8588 1-302-570-0510  877 200-0118 888 777 6690

48 (Pages 186 to 189)