# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION | : : : | MDL 875 |
| JEAN KILGORE, Executrix of the Estate of VICTOR B. KILGORE, deceased and widow in her own right, <br> Plaintiffs, <br> v. <br> ALLEN-BRADLEY COMPANY, et al., <br> Defendants. | : : : : : : : : : : : : | Case No. 13-CV-4029 |

**PENNSYLVANIA POWER & LIGHT COMPANY'S (SUED AS PP&L CORPORATION) REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Pennsylvania Power & Light Company, sued as PP&L Corporation, by and through its counsel, White and Williams LLP, files this Reply in Support of its Motion for Summary Judgment. PP&L requests summary judgment for the reasons set forth in its Motion. In response to Plaintiff's Opposition, Mr. Kilgore's deposition testimony is inadmissible hearsay and does not represent statements made under the belief of impending death for the purpose of a dying declaration. Moreover, Mr. Kilgore's testimony is inadmissible hearsay where PP&L did not attend the deposition, and no party at the deposition had similar motive and incentive to develop Plaintiff's testimony in PP&L's defense as the premises owner. Lastly, Plaintiff erroneously asserts that a lesser standard applies for establishing causation in a negligence claim against premises owners than in a strict liability claim against product manufacturers. Plaintiff must still meet the causation requirements for asbestos exposure, and has failed to do so in this case.

## I. PLAINTIFF'S DEPOSITION TESTIMONY IS INADMISSIBLE HEARSAY

### A. Plaintiff's Deposition Testimony Does Not Satisfy the "Imminency" Requirement for a Dying Declaration Under Rule 804(b)(2)

Plaintiff asserts that Mr. Kilgore's testimony should be admissible as a dying declaration. (See Plaintiff's Opposition to Defendant PP&L's Motion for Summary Judgment, p. 4). Pennsylvania Rule of Evidence 804(b)(2) defines a dying declaration as a statement made by a declarant while believing his death was imminent, and concerning the cause or circumstances of his impending death. Pa.R.E. 804(b)(2). To be admissible as a dying declaration, a statement must be made under the belief of impending death. Ritter v. Garlock, 2010 WL 4053291 at *3, 4 (Pa. Com. Pl. August 10, 2010)(Tereshko, J.), citing to Commonwealth v. Smith, 314 A.2d 224, 225 (Pa. 1973). The admissibility of such evidence depends primarily upon the declarant's state of mind. Id. State of mind may be inferred from the nature of the declarant's words. Commonwealth v. Gause, 330 A.2d 856, 858 (Pa. 1975)(dying declaration where declarant specifically indicated in the statement that he believed he was dying).

In the Ritter v. Garlock decision, a case that is factually similar to the one at bar, the court found that the plaintiff did not meet imminency requirement of Rule 804(b)(2). The plaintiff worked for 40 years for various railroads in Pennsylvania, New Jersey and New York. Id. at *1. He was diagnosed with mesothelioma in March 2005 and initiated a lawsuit June 2005 alleging that his mesothelioma was a result of occupational exposure to asbestos. Id. The deposition of the plaintiff commenced on May 12, 2006, but terminated early due to the plaintiff's fatigue. Id. at *2. The plaintiff died three months later. Id. In 2007, the court granted the defendants Garlock and General Electric's motions *in limine* precluding the plaintiff from using the videotape and discovery depositions at trial because the testimony amounted to inadmissible

hearsay.  Id.  In 2008, the court granted defendants Garlock, General Electric and Viad's motions for summary judgment.  Id.

On appeal, the plaintiff argued that the decedent's videotape and discovery deposition testimony were admissible as dying declarations.  Id. at 3.  The court held that they were not, finding that the plaintiff did not die until more than two months after the deposition.  Id. at 4.  The court also found that the plaintiff did not believe his death was imminent at the time he gave the aborted deposition.  Id.  The court noted that the plaintiff seemed determined to survive, even testifying about his future plans to attend a Budweiser beer event after his lung was back in shape.  Id.  The court concluded that the plaintiff was "not one resigned to death in the immediate future."  Id.

There is minimal, if any, disparity between the facts in Ritter and those in the present case.  Here, Mr. Kilgore died on September 15, 2013, nearly three months after his deposition occurred.  Moreover, Mr. Kilgore's deposition testimony indicates that he did not believe his death was imminent at the time he gave his deposition.

> Q. Have they given you any prognosis?
> A. In a sense, yes.  *He said it is not curable, but treatable.  So, I am hoping that eventually the chemo will be over and then just monitoring it.  I still have one good lung and half of another one.  So, I hope to do light chores.*
> Q. Do you have any fears or concerns for the future for yourself?
> A. *No. Because I think they're on it now.*  You know, there's many, many cancers and I don't know where this one lies.
> …
> Q. Would you like to tell the grandchildren history stories about your life and about things?  Are there still things you would like to tell them that you haven't told them yet?
> A. Yes.  There is.
> Q. Are you afraid, or fearful, or concerned that you won't be able to do those things?

A. No. I wouldn't say fearful. *If it did not happen*, maybe a little disappointed.

Deposition Testimony of Plaintiff, Victor B. Kilgore, dated June 28, 2013, at pp. 89-90. (emphasis added)

Mr. Kilgore's own deposition testimony belies Plaintiffs' claim that he gave statements under the belief of impending death. In fact, one could infer from Mr. Kilgore's testimony regarding his medical treatment that he did not expect to die in the immediate future. Mr. Kilgore did not believe his death was imminent. Therefore, his deposition testimony is hearsay and is not admissible as a dying declaration to support Plaintiff's opposition to PP&L's motion for summary judgment.

**B.   Plaintiff's Deposition Testimony Is Not Admissible as Former Testimony Where No Product Defendant Had Similar Motive to Protect PP&L's Interests as a Premises Owner**

Former testimony is not admissible unless the party against whom the testimony is now offered, or in a civil case, a predecessor-in-interest, had adequate opportunity and similar motive to develop the plaintiff's testimony. Fed. R. Evid. 804(b)(1). This Court previously decided this issue in Blackburn v. Northrup Grumman Newport News, No. 06-68004, 2011 WL 6016092 (E.D. Pa. Aug. 31, 2011)(Robreno, J.). In Blackburn, this Court opined that the "similar motive" requirement ensures that the earlier treatment of a witness is the equivalent of what a party would do if the witness were available to be examined by that party. Id., at *1 n. 1, quoting United States v. Salerno, 937 F.2d 797, 806 (2d Cir. 1994). Plaintiff joined PP&L to this action after Plaintiff's deposition and his death in September 2013. PP&L had no opportunity to cross-examine Mr. Kilgore regarding his work history and alleged asbestos exposure at PP&L. Therefore, the burden is on Plaintiff to show that a party who attended the deposition had similar

motive and incentive in developing evidence to defend Plaintiffs' negligence claim against PP&L.

In Blackburn, this Court found that sufficiently similar motives did not exist between the product defendants in an earlier action and the shipyard owner in a subsequent action to overcome the hearsay rule. 2011 WL 6016092, at *1 n. 1. The shipyard owner was not a defendant in the earlier action, which was comprised of manufacturers of asbestos-containing products. Id. This Court explained that the product manufacturers in the earlier action had a motive to show that the shipyard employees did not work around asbestos for which they were liable. Id. However, the shipyard owner had an *opposite* motive of showing that the product manufacturers were responsible for the employees' asbestos exposure. Id. (emphasis added). This Court held that the deposition from the earlier case was not equivalent to what the shipyard would have done had it been present at the earlier deposition. Id. Thus, this Court deemed the earlier deposition inadmissible as former testimony in the subsequent action. Id. at *1.

Plaintiff cannot establish that any party at Mr. Kilgore's deposition had "similar motive" as PP&L to defend Mr. Kilgore's premises liability claims. GE, Westinghouse and Crown Cork, as product defendants, would not have had an incentive or interest in developing facts in support of defenses available only to PP&L as a premises owner. Under these circumstances, Mr. Kilgore's deposition testimony as to product identification and exposure to specific products is not admissible as against PP&L.

**II.   Plaintiff Fails To Meet Causation Requirements Against PP&L as a Premises Owner**

With no legal support, Plaintiff asserts that "The Standard for Exposure in Premises Cases is Lesser." See Plaintiff's Opposition at p. 4. To the contrary, causation is a critical

element of both strict liability claims against product manufacturers and negligence claims against premises owners.

Plaintiff's citation to Gutteridge v. A.P. Green Servs., 804 A.2d 643 (Pa. Super. 2002), appeal denied 829 A. 2d 1158 (Pa. 2003), in support of her proposition that a lesser standard of causation applies in negligence cases is misguided. The primary focus of Gutteridge was the duty owed by premises owners to employees of independent contractors upon their premises. Nothing in Gutteridge eliminated the causation element to establish negligence claims. In fact, in Gutteridge, the Superior Court stated that in a premises liability case, while the proof requirements are not identical to the proof requirements against a product manufacturer, "the necessity of demonstrating a causal nexus is analogous to Eckenrod." Gutteridge, 804 A.2d at 654-55, citing Eckenrod v. GAF Corp., 544 A.2d 50 (Pa. Super. 1988).

Further, Gutteridge stated that in order to prevail on a negligence claim, a plaintiff must prove four elements: "(1) a duty or obligation recognized by the law that requires an actor to conform his actions to a standard of conduct for the protection of others against unreasonable risks; (2) failure on the part of the defendant to conform to that standard of conduct, *i.e.,* a breach of duty; (3) a reasonably close causal connection between the breach of duty and the injury sustained; and (4) actual loss or damages that result from the breach. Gutteridge, 804 A.2d at 654-55, citing Ney v. Axelrod, 723 A.2d 719, 721 (Pa. Super. 1999).

In order to prevail on a claim against PP&L that Mr. Kilgore contracted mesothelioma as a result of work at a PP&L plant, Plaintiff must present competent, admissible evidence that PP&L breached a duty which caused him to inhale asbestos fibers at the PP&L plant, and that the inhalation of those fibers was a substantial contributing factor in the development of his mesothelioma.

The record is devoid of evidence that Mr. Kilgore inhaled asbestos fibers at a PP&L plant. First, the only testimony that Mr. Kilgore was even present at a PP&L plant is the inadmissible deposition testimony of Mr. Kilgore taken before PP&L was joined as a party to this lawsuit. Second, even if Mr. Kilgore's testimony were admissible against PP&L, which it is not, it fails to establish that Mr. Kilgore inhaled any asbestos fibers at the PP&L plant.

Mr. Kilgore testified that he worked at the Holtwood plant in the summer of 1950 as a summer hire, performing some painting, cleaning parts and other "labor type work." See Exh. B to moving papers, at p. 81. He testified that he did not believe that he was exposed to asbestos while working for PP&L that summer. Id. at 85. While he observed pipe covering and pipe insulation at the Holtwood plant, he was never around the insulation and he never personally worked with any of the insulation on the steam pipes. Id.

Mr. Kilgore testified that he returned to work for PP&L as a laborer for four months in 1956. Id. at pp. 145, 147-148. He testified that at one point he did work painting in the boiler room, but that he did not recall anyone cutting or disturbing any insulation while he worked in the boiler room. Id. at 146. He testified that "maybe" he was exposed to a "minor amount" of asbestos while painting in the boiler room, "…[j]ust by being in the proximity of insulation maybe." Id. Testimony that "maybe" he was exposed to asbestos just by being in proximity to insulation which neither he nor anyone else disturbed, fails to meet the causation element of a negligence claim against PP&L.

Based on the lack of evidence against PP&L, PP&L is entitled to summary judgment as a matter of law on Plaintiff's negligence claim.

**WHEREFORE**, Defendant, Pennsylvania Power & Light Company, sued as PP&L Corporation, respectfully requests that summary judgment be entered its favor and against Plaintiff.

                                                  **WHITE AND WILLIAMS LLP**

BY: _/s/ Kathy A. O'Neill_
                                                  Andrew F. Susko, Esquire
                                                  Kathy A. O'Neill, Esquire
                                                  1650 Market Street
                                                  One Liberty Place, Suite 1800
                                                  Philadelphia, PA  19103-7395
                                                  215.864.7000
                                                  suskoa@whiteandwilliams.com
                                                  oneill@whiteandwilliams.com
                                                  Attorneys for Defendant,
                                                  Pennsylvania Power & Light Company,
                                                  sued as PP&L Corporation

Dated:  November 5, 2014

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Reply in Support of Motion for Summary Judgment of Defendant Pennsylvania Power & Light Company (sued as PP&L Corporation) was served via Court's ECF/Pacer system on the 5th day of November, 2014 upon the following:

    Respectfully submitted,

    **WHITE AND WILLIAMS LLP**

BY: *Kathy A. O'Neill*
    Andrew F. Susko, Esquire
    Kathy A. O'Neill, Esquire
    1650 Market Street
    One Liberty Place, Suite 1800
    Philadelphia, PA  19103-7395
    215.864.7000
    suskoa@whiteandwilliams.com
    oneill@whiteandwilliams.com
    Attorneys for Defendant,
    Pennsylvania Power and Light Company
    sued as PP&L Corporation

Dated:  November 5, 2014