# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JEAN KILGORE, EXECUTRIX OF THE ESTATE OF VICTOR KILGORE AND JEAN KILGORE, WIDOW IN HER OWN RIGHT,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**CBS CORPORATION,** *et al.***,**<br><br>**Defendants.** | CIVIL ACTION<br><br>NO. 2:13-cv-04029-ER<br><br>MDL 875<br><br>Asbestos Case |

## REPLY OF CBS CORPORATION
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff's Response, ECF No. 404, *see* 403, fails to overcome the deficiencies of this record as set forth by the Motion for Summary Judgment of CBS Corporation, successor by merger to Westinghouse Electric Corporation ("Westinghouse"), filed at ECF Nos. 393, *see* 396, 411, such that summary judgment is here required in favor of CBS Corporation.

As to Mr. Kilgore's few months at PP&L Holtwood station, the testimony attached to Plaintiff's Response confirms that Mr. Kilgore had no exposure from, and no frequent, proximate, or regular exposure to respirable dust, if any, from any Westinghouse equipment or generator there:

> Q. Tell us what you did with respect to the Westinghouse generator
> ….
> A. Well, the Westinghouse, I don't recall anything.
> …
> Q. Did anybody work on the Westinghouse generator at Holtwood while you were present?
> A. No.

ECF No. 404 at 20, Pl. Response Ex. A, Victor Kilgore, Dep. Jun. 27, 2013, at 306:19-25, 307:15-17. Such testimony corroborates the lack of Westinghouse exposure evidence at Holtwood as detailed in CBS's motion. *See,* ECF 393 at 6-7, § II.B.1.

Similarly, for the *USS Navarro*, the excerpts of testimony supplied with Plaintiff's Response bear out Mr. Kilgore's limited involvement with any Westinghouse equipment on the ship; and fail to identify the manufacturer or supplier of any insulation that may have been the source of any asbestos or dust to which he may have been exposed. For instance, for any dock or drydock periods, the testimony confirms such lack of any Westinghouse-related exposure. *See, e.g.,* ECF 404-1 at 34, Pl. Response Ex. F, Victor Kilgore, Dep. at 317:8-11 ("Q. It wasn't your job to watch them put the generator in because your job was on the boiler, right? A. Yes"). As to the blower repair at sea, none of the testimony identifies Westinghouse as the supplier of any of the insulation. ECF 404-1 at 32, 40, Dep. at 96:18-97:13, 354:4-355:20. Such testimony substantiates the lack of Westinghouse exposure evidence on the *USS Navarro*, as detailed in CBS's motion. *See,* ECF 393 at 7-9, § II.B.2.

For the remainder of Mr. Kilgore's career, whether on the *USS Wrangell*, or other employments, Plaintiff's Response offers no evidence concerning any alleged Westinghouse exposure. ECF 404, *passim.*

The exhibits supplied by Plaintiff's Response fail to cure the deficiencies of this record. The partial interrogatory answers from another litigation identify only categories of products that "may" have contained asbestos, without correlation to Mr. Kilgore, his ships, or worksites. Pl. Response, Ex. B, ECF 404 at 25-31. The various land-turbine specifications and documents are likewise unrelated to Mr. Kilgore, any worksites, or any times or places of alleged exposure. *Id.*¸ Pl. Ex. C, ECF 404 at 32-50; 404-1, 1-20. The interrogatory answers of Westinghouse in this

litigation assert appropriate objections, but show no exposure to Mr. Kilgore. *Id.*, Pl. Ex. D, 404-1 1t 23-27. The Navy documents for the repair at sea of the Westinghouse forced draft blower on the *USS Navarro* merely identify the equipment manufacturer, but not the supplier of any of the insulation to which Mr. Kilgore alleged exposure. *Id.,* Pl. Ex. E, ECF 404-1 at 28-30. The other Navy documents regarding the *USS Navarro's* departure report, *Id.,* Pl. Ex. G. ECF 404-1 at 44-50, ECF 404-2 at 1-10; turbine report, Pl. Ex. H, ECF 404-2 at 11-14; and HP turbine repair, Pl. Ex. I, ECF 404-2 at 15-18, similarly fail to identify Westinghouse as the manufacturer or supplier of any external insulation to which Mr. Kilgore may have been exposed. Nor do the military specifications suggest any supply of insulation by an equipment manufacturer. Pl. Ex. K, ECF 404-2 at 26-50, 404-3 at 1-28. The affidavit of plaintiff's liability expert, Arthur Faherty, fails to mention Westinghouse by name, and as to any equipment, including turbines or forced draft blowers, attributes any potential exposures of Mr. Kilgore on the US Navy ships only to removal or replacement of external "lagging and insulation" from non-identified suppliers. Pl. Ex. L, ECF 404-3 at 29-41, *esp.* ECF 404-3 at 31-32, ¶¶ 20-24. The documents concerning Westinghouse manufacturing reference some use of asbestos lagging or cloth on some turbines or equipment, but are uncorrelated to any equipment supplied to the U.S. Navy, nor to any of Mr. Kilgore's times or places of alleged exposures, nor to any of his ships or worksites. Pl. Ex. M, ECF 404-3 at 42-45. Plaintiff's medical expert report and attachments from Dr. Arthur Frank offer no evidence as to product identification or particular exposures. Pl. Ex. N, ECF 404-3 at 46-50, 404-4 at 1-50, 404-5 at 1-20. The state trial-court motions and orders from other cases provide neither legal authority nor any evidence regarding the present claims of Mr. Kilgore. Pl. Exs. O, P, ECF 404-5 at 21-50, 404-6 at 1-2. Thus, these exhibits fail to overcome the deficiencies of evidence here requiring summary judgment.

The legal arguments of Plaintiff's Response also lack merit.

Regarding maritime law, Plaintiff's Response offers no evidence of any alleged exposure of Mr. Kilgore during his U.S. Navy career from any Westinghouse product other than equipment aboard a ship, specifically the *USS Navarro*. Pl. Response, ECF 404, *passim*. Plaintiff's arguments that "ship yard work is not subject to maritime law," and that when Navy ships "were in drydock being repaired they were not engaged in maritime activity," Pl. Response, ECF 404 at 5, 6, §§ II.A., II.C., ignore this Court's distinctions between land-based and ship-based work; and this Court's well-supported holdings that ships under repair at dock or in drydock remain maritime subjects; that alleged asbestos exposures onboard such ships in dock or drydock meet the locality and connection tests; and are subject to maritime law. *See, e.g., Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 466 (E.D. Pa. 2011) (Robreno, J.) (work on "navigable waters" includes work performed on ships in dock or drydock at shipyards). Thus, maritime law applies here to Mr. Kilgore's alleged exposures while on U.S. Navy ships, and requires summary judgment. *See,* CBS Mot. Sum. J., ECF 393 at 13-15, 16-17, 23-24.

The arguments in Plaintiff's Response from cases addressing negligence of "shipbuilders," s*ee,* Pl. Response, ECF 404 at 6-7, § III., concern an entity with a different role and range of responsibilities than an equipment-manufacturer, such as Westinghouse, and are inapplicable here. The arguments asserted by Plaintiff's Response have previously been rejected by this Court. *Contrast, Salisbury v. Asbestos Corp. Ltd.*, MDL 875, U.S.D.C., E.D. Pa. 2:12-cv-60168-ER, 2014 WL 345214, *5 (E.D. Pa. Jan. 29, 2014) ("it [was] undisputed that the [shipbuilder] defendant installed asbestos insulation aboard the ship"), *and Filer v. Foster Wheeler, LLC,* MDL 875, E.D. Pa. Civil Action No. 2:12–cv-60034–ER, 2014 WL 345221, *9 n. 8, 10-11 (E.D. Pa. Jan. 29, 2014) (shipbuilder provides "services" in assembling "thousands" of

products into a new chattel, the ship; "a shipbuilder is most akin to a provider of services"), *with Conner v. Alfa Laval, Inc.,* 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012) (granting summary judgment to equipment-manufacturer, "a manufacturer is not liable for harm caused by, and owes no duty to warn of the hazards inherent in, asbestos products that the manufacturer did not manufacture or distribute."). *See, e.g., Carper v. Gen. Elec. Co.,* MDL 875, E.D. Pa. Civil Action No. 2:12–cv-06164–ER, ECF 111 (E.D. Pa. Sep. 3, 2014) (granting summary judgment to equipment-manufacturer despite plaintiff having raised same shipbuilder-case arguments).

Plaintiff's arguments regarding Pennsylvania asbestos-exposure law, *see* Pl. Response, ECF 404 at 5-6, 8-9, §§ II.C., II.D., V., fail to overcome the lack of evidence, showing that Mr. Kilgore, whether at the Holtwood plant or elsewhere, either had no exposure from, and also had no frequent, proximate, or regular exposure to respirable dust, if any, shed by any properly identified Westinghouse asbestos-containing product, sufficient to meet the standards of Pennsylvania law. *Gregg v. V-J Auto Parts Company*, 596 Pa. 274, 292, 943 A.2d 216, 227 (2007), and *Eckenrod v. GAF Corp.*, 375 Pa. Super. 187, 190-92, 544 A.2d 50, 52-53, *appeal denied*, 520 Pa. 605, 553 A.2d (1988), *accord, Krauss v. Trane U.S. Inc.,* 2014 Pa. Super 241*, ___* A.3d ___ (Pa. Super. Oct. 22, 2014) (affirming grant of summary judgment to, *inter alia,* CBS Corporation in asbestos case, reviewing standards of Pennsylvania asbestos exposure law). Thus, summary judgment is required on these grounds as well. *See,* CBS Mot. Sum. J., ECF 393 at 6-7, 18-19, 24, §§ II.B.1, III.G., IV.C.

Regarding the statute of repose, 42 Pa.C.S.A. § 5536, Plaintiff's Response fails to offer any evidence to refute the undisputed facts that the only land-based products of Westinghouse in issue, alleged generators or turbines at the PP&L Holtwood Station, encountered in the 1950's, are permanent improvements to real property that were designed and completed more than

5

twelve years before the filing of this civil action, such that plaintiffs' claims are barred by that statute of repose. The arguments of Plaintiff's Response regarding this statute, Pl. Response, ECF 404 at 9-14, § V., fail to overcome the clear, recent, and unequivocal Pennsylvania appellate authority applying that statute of repose to require legal dismissal from a latent-disease asbestos case of the defendant-manufacturer of a permanent-improvement product, like the turbines or generators in issue here, completed more than twelve years before the filing of the civil action. *Graver v. Foster Wheeler Corp.*, 96 A.3d 383 (Pa. Super. 2014). Thus, this legal principle also requires summary judgment. *See,* CBS Mot. Sum. J., ECF 393 at 7, 19-21, 25, §§ II.B.1., III.H., IV.D.

Regarding remaining issues, including the government-contractor defense, if reached, CBS relies upon the arguments set forth in its motion.

Accordingly, as set forth more fully in its Motion for Summary Judgment, ECF 393, *see* 396, 411, summary judgment must be granted to CBS Corporation as to all of plaintiff's claims and all cross-claims by entry of an Order as there attached.

                                        Respectfully submitted,

Dated: November 5, 2014                  /s/ John P. McShea
                                        John P. McShea
                                        Conrad O. Kattner
                                        McSHEA LAW FIRM, P.C.
                                        Centre Square, West Tower
                                        1500 Market Street, 40th Floor
                                        Philadelphia, PA 19102
                                        (215) 599-0800

                                        *Attorneys for Defendant,*
                                        *CBS Corporation*

# CERTIFICATE OF SERVICE

This is to certify that on this 5th day of November, 2014, a true and correct copy of the foregoing REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, CBS CORPORATION was served on all counsel of record, *via electronic filing*.


   /s/  John P. McShea
John P. McShea