IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VICTOR B. KILGORE, ET AL., : CONSOLIDATED UNDER
: MDL 875
:
Plaintiffs, :
:
v. :
:
:
ALLEN-BRADLEY COMPANY, : E.D. PA CIVIL ACTION NO.
ET AL., : 2:13-04029-ER
:
Defendants. :

# O R D E R

**AND NOW**, this **10th** day of **November, 2014**, it is hereby

**ORDERED** that the Motion for Summary Judgment of Defendant Georgia

Pacific, LLC (Doc. No. 389) is **GRANTED in part; DENIED in part.**[1]

---

[1] This case was removed in July of 2013 from the Court of Common Pleas of Philadelphia to the United States District Court for the Eastern District of Pennsylvania as part of MDL-875.

Plaintiffs allege that Victor Kilgore ("Plaintiff" or "Mr. Kilgore") was exposed to asbestos, inter alia, while working as a carpenter's apprentice at Aberden Proving Ground in Maryland during the years 1962 to 1988. Defendant Georgia Pacific LLC ("Georgia Pacific") manufactured roof coating and joint compound, some of which contained asbestos. The alleged asbestos exposure pertinent to Defendant occurred at Aberden.

Plaintiffs assert that Mr. Kilgore developed mesothelioma as a result of exposure to asbestos from Defendant's products. He was deposed in June of 2013.

Plaintiffs brought claims against various defendants. Defendant has moved for summary judgment, arguing that there is insufficient evidence to establish causation with respect to its product(s).

Defendant asserts that Pennsylvania law applies. Plaintiffs contend that, because the exposure was in Maryland, Maryland law applies.

## II. Legal Standard

### A. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

### B. The Applicable Law

Defendant asserts that Pennsylvania law applies. Plaintiffs contend that Maryland law applies. The alleged exposures pertinent to Defendant occurred exclusively in Maryland. Therefore, the Court will apply Maryland law to Plaintiffs' claims against Defendant. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); see also Guaranty Trust Co. v. York, 326 U.S. 99, 108 (1945).

### C. Product Identification/Causation Under Maryland Law

This Court last addressed the standard for product identification/causation in an asbestos case under Maryland law in January of 2011, in Walker v. Owens-Illinois Glass Corp., No. 07-62843, 2011 WL 4790626 (E.D. Pa. Jan. 28, 2011)(Robreno, J.).

2

In <u>Walker</u>, this Court wrote:

> In <u>Eagle-Picher Industries, Inc. v. Balbos</u>, two shipyard workers alleged that they had contracted mesothelioma due to exposure to several defendants asbestos-containing products at different Bethlehem Steel Shipyards. 326 Md. 179, 604 A.2d 445, 449 (Md. 1992). In considering whether Eagle's powder, which contained asbestos, was a substantial cause of either plaintiffs' mesothelioma, the court noted that, "evaluation of that argument requires an appreciation of the workplace environment of each decedent." <u>Id.</u> at 457. The court determined that direct evidence of exposure is not required and that rather, circumstantial evidence can be sufficient. <u>Id.</u> at 460 (citing <u>Roehling v. Nat'l Gypsum Co. Gold Bond Bldg. Products</u>, 786 F.2d 1225, 1228 (4th Cir.1986). The court determined that:
>
>> Whether the exposure of any given bystander to any particular supplier's product will be legally sufficient to permit a finding of substantial-factor causation is fact specific to each case. The finding involves the interrelationship between the use of a defendant's product at the workplace. This requires an understanding of the physical characteristics of the workplace and of the relationship between the activities of the direct users of the product and the bystander plaintiff. (Internal citation omitted). Within that context, the factors to be evaluated include the nature of the product, the frequency of its use, the proximity, in distance and in time, of a plaintiff to the use of a product, and the regularity of the exposure of that plaintiff to the use of that product. (<u>See</u> <u>Lohrmann v. Pittsburgh Corning Corp.</u>, 782 F.2d 1156, 1162-63 (4th Cir.); other internal citations omitted). In addition, trial courts must consider the evidence presented as to medical causation of the plaintiffs particular disease. (Internal quotations omitted.)
>
> <u>Balbos</u>, 604 A.2d at 460.

3

In AC & S, Inc. v. Godwin, the Court of Appeals of Maryland applied the "frequency, regularity, and proximity" test in deciding the appeals of three plaintiffs who had never worked directly with asbestos-containing products. 340 Md. 334, 667 A.2d 116, 123 (Md. 1995). Plaintiffs presented product identification witnesses who identified Defendant's product as being used at the Bethlehem Steel plaint and indicated that outside contractors were in the vicinity when these products were used. Id. Russell, one of the plaintiffs in Godwin, was a pipefitter who worked for various contractors at Bethlehem Steel. Id. at 125. Russell testified that he worked at certain mills at Bethlehem Steel. Id. Russell testified that he was exposed to asbestos, but could not recall the names of any manufacturers. Id. There was also evidence that Bethlehem Steel pipe coverers used asbestos during the time Russell worked there and that Russell worked in proximity to Bethlehem Steel employees. Id. at 125-26. The court found that there was sufficient evidence of substantial causation to take the case to the jury on the behalf of Russell. Id. at 126.

In Reiter v. Pneumo Abex, LLC, the Maryland Court of Appeals granted defendants' motions for summary judgment as to several plaintiffs' bystander claims. 2010 WL 4670579, at 5 (Md. Nov. 19, 2010). Plaintiffs each presented evidence that they had worked in certain mills at the Bethlehem Steel Sparrows Point facility and that defendants' asbestos-containing brakes were in these mills. Id. at 2. The court held that taking into account the "massive cavernous size" of the facilities as well as the distance from laborers to the braking systems on the cranes" plaintiffs failed to present sufficient evidence of proximity to survive summary judgment. Id. at 5.

In summary, the Court of Appeals of Maryland has liberally applied the "frequency, regularity, and proximity" test and allowed plaintiffs to survive summary judgment with circumstantial evidence of exposure. However, the Court of Appeals of Maryland has required plaintiffs to identify their specific area of exposure and has considered the size of the facility at issue in determining whether plaintiffs have shown proximity through circumstantial evidence of exposure.

Walker, 2011 WL 4790626.

Since the time of this Court's decision in Walker, the Maryland Court of Appeals has confirmed that Maryland utilizes the "frequency, regularity, and proximity test," and that circumstantial evidence of exposure – even absent any direct evidence of exposure – is sufficient to establish causation. Scapa Dryer Fabrics, Inc. v. Saville, 418 Md. 496, 504-511, 16 A.3d 159, 163-168 (Md. 2011).

### III. Defendant Georgia Pacific's Motion for Summary Judgment

#### A. Defendant's Arguments

Defendant contends that Plaintiffs' evidence is insufficient to establish that any product for which it is responsible caused the illness at issue.

#### B. Plaintiffs' Arguments

Plaintiffs contend that they have identified sufficient product identification/causation evidence to survive summary judgment. In support of this assertion, they cite to the following evidence, summarized in pertinent part as follows:

- Photo of Roof Coating Container
  Plaintiffs point to a photograph of a container of Georgia Pacific roof coating, which indicates that it is "asbestos asphalt roof coating." This photograph is marked as Plaintiff's Exhibit 2 from Mr. Kilgore's deposition.

  (Pl. Ex. C, Doc. No. 400.)

- Depositions of Plaintiff
  Mr. Kilgore testified that he worked at the Aberden Proving Ground from 1962 to 1988. He testified that he worked with roof coating there. He identified the photograph marked as Exhibit 2 (above) as a product he used, but later testified that he was not certain whether that was the exact label on the Georgia Pacific roof coating that he used.

5

He testified that he applied the roof coating
when it was wet and that he did not have to
later sand it or handle it when it was dry,
although he would occasionally have to sweep
up pieces that dried and broke off. He also
testified that he used Georgia Pacific joint
compound throughout his entire 26 years at
Aberden.

(Pl. Exs. A and B, Doc. No. 400.)

- Depositions of Co-Worker (James Miller)
  Co-worker James Miller testified that,
  beginning in 1979 and lasting through 1988,
  he worked side by side with Mr. Kilgore at
  Aberden. He provides testimony that
  approximately once every two weeks, he
  witnessed Mr. Kilgore sand asbestos-
  containing Georgia Pacific Ready mix joint
  compound, such that it created respirable
  dust. He testified that he never saw Mr.
  Kilgore wearing breathing protection and that
  he never saw any warnings from Georgia
  Pacific about the hazards of the asbestos in
  the product.

  (Pl. Exs. D and E, Doc. No. 400.)

- Depositions of Georgia Pacific Corporate
  Representative (Oliver Burch)
  Mr. Burch, a corporate representative for
  Defendant, testified that, by 1977, none of
  the joint compound being manufactured by
  Defendant contained asbestos.

  (Pl. Exs. F and G, Doc. No. 400.)

C. Analysis

Plaintiffs allege that Mr. Kilgore was exposed to
asbestos from roof coating and joint compound manufactured by
Defendant. The Court considers the evidence pertinent to each
alleged source of exposure separately:

### i) Roof Coating

There is evidence that Mr. Kilgore worked with Georgia Pacific roof coating. There is evidence that he occasionally would have to sweep up pieces of it that broke off after it dried (presumably creating dust).

Importantly, however, given his testimony that he did not recall if the label in the picture in Exhibit 2 was the same label he saw, there is no evidence that any of the Georgia Pacific roof coating to which Mr. Kilgore was exposed contained asbestos. In addition, there is no evidence that he was exposed to respirable dust from the product with the frequency, regularity, and proximity required by Maryland law. As such, no reasonable jury could conclude from the evidence that roof coating manufactured or supplied by Defendant was a substantial factor in the development of Mr. Kilgore's mesothelioma because any such finding would be based on conjecture. See Scapa Dryer Fabrics, 418 Md. at 504-511. Accordingly, summary judgment in favor of Defendant is warranted. Anderson, 477 U.S. at 248-50.

### ii) Joint Compound

There is evidence that Mr. Kilgore worked with Georgia Pacific Ready Mix joint compound during his entire 26 years at Aberden (beginning in 1962). There is evidence that Georgia Pacific manufactured some formulations of joint compounds with asbestos until 1977. There is evidence from co-worker Miller that Mr. Kilgore was exposed to respirable dust from Georgia Pacific Ready Mix joint compound, on average, once every two weeks during the years 1979 to 1988. There is also evidence from Mr. Miller that Mr. Kilgore was exposed to respirable asbestos dust from Georgia Pacific joint compound. As such, a reasonable jury could conclude from the evidence that joint compound manufactured by Defendant was a substantial factor in the development of Mr. Kilgore's mesothelioma. See Scapa Dryer Fabrics, 418 Md. at 504-511. Accordingly, summary judgment in favor of Defendant is not warranted with respect to this alleged source of exposure. Anderson, 477 U.S. at 248-50.

### D. Conclusion

Summary judgment in favor of Defendant is granted with respect to Plaintiffs' claims against it arising from alleged

**AND IT IS SO ORDERED.**

                                    _____
                                    EDUARDO C. ROBRENO, J.

---

asbestos exposure in connection with roof coating because
Plaintiffs have failed to identify sufficient evidence of
product identification/causation with respect to this product.

      Summary judgment in favor of Defendant is denied with
respect to Plaintiffs' claims against it arising from alleged
asbestos exposure in connection with joint compound because
Plaintiffs have identified sufficient evidence of product
identification/causation with respect to this alleged source of
exposure.