IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VICTOR B. KILGORE, ET AL.,      :      CONSOLIDATED UNDER
                                :      MDL 875

        Plaintiffs,             FILED

        v.                      NOV 13 2014

                                MICHAEL E. KUNZ, Clerk
                                By_____ Dep. Clerk

ALLEN-BRADLEY COMPANY,          :      E.D. PA CIVIL ACTION NO.
ET AL.,                         :      2:13-04029-ER
                                :
        Defendants.             :

## O R D E R

**AND NOW,** this **12th** day of **November, 2014**, it is hereby

**ORDERED** that the Motion for Summary Judgment of Defendant Crown

Cork and Seal Company, Inc. (Doc. No. 347) is **GRANTED**.[1]

---

[1]     This case was removed in July of 2013 from the Court of
Common Pleas of Philadelphia to the United States District Court
for the Eastern District of Pennsylvania as part of MDL-875.

        Plaintiffs allege that Victor Kilgore ("Plaintiff" or
"Mr. Kilgore") was exposed to asbestos while, inter alia, working
at the PP&L plant in Holtwood, Pennsylvania during the period
1950 to 1956. Plaintiffs allege that Mr. Kilgore was exposed to
asbestos from insulation supplied by Mundet Cork Corporation, a
predecessor-in-interest to Defendant Crown Cork and Seal Company,
Inc. ("Crown Cork") at the Holtwood PP&L plant.

        Plaintiffs assert that Mr. Kilgore developed
mesothelioma as a result of exposure to Defendant's insulation.
He was deposed in June of 2013 and died in July of 2013.

        Plaintiffs brought claims against various defendants.
Defendant has moved for summary judgment, arguing that there is
insufficient admissible evidence to establish any exposure for
which it can be liable.

        Defendant does not make clear what law it contends
applies - citing to both New York and Delaware law as precedent.
Plaintiffs assert that Pennsylvania law applies.

## I. Legal Standard

### A. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

### B. The Applicable Law

The alleged exposures giving rise to all of Plaintiffs' claims against Defendant occurred in Pennsylvania. Therefore, the Court will apply Pennsylvania law in deciding Defendant's motion for summary judgment. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); see also Guaranty Trust Co. v. York, 326 U.S. 99, 108 (1945).

### C. Exposure/Causation Under Pennsylavnia Law

Under Pennsylvania law, a plaintiff must establish, as a threshold matter, "that [his or her] injuries were caused by a product of the particular manufacturer or supplier." Eckenrod v. GAF Corp., 375 Pa. Super. 187, 544 A.2d 50, 52 (Pa. Super. Ct. 1988)(citing Wible v. Keene Corp., No. 86-4451, 1987 WL 15833 at

*1 (E.D. Pa. Aug.19, 1987)(in order to defeat defendant's motion, plaintiff must present evidence showing that he or she was exposed to an asbestos product supplied by defendant)). Beyond this initial requirement, a plaintiff must further establish that the plaintiff was exposed to a certain defendant's product with the necessary frequency and regularity, and in close enough proximity to the product, to create a genuine issue of material fact as to whether that specific product was a substantial factor (and thus the proximate cause) of Plaintiff's asbestos related condition. Eckenrod, 544 A.2d at 52-53.

In addition to articulating the "frequency, regularity and proximity" standard, Eckenrod also held that "the mere fact that appellees' asbestos products came into the facility does not show that the decedent ever breathed these specific asbestos products or that he worked where these asbestos products were delivered." Id. at 53. Gregg v. VJ Auto Parts, Co., 596 Pa. 274, 943 A.2d 216 (Pa. 2007), further upheld the discretion of the trial court in evaluating the evidence to be presented at the trial stage, ruling that, "we believe it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in light of the evidence concerning frequency, regularity, and proximity of a plaintiff's ... asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury." Id. at 227.

The Gregg court adopted a fact sensitive approach regarding the sufficiency of product identification evidence. Id. at 225. Moreover, "the plaintiff's exposure to each defendant's product should be independently evaluated when determining if such exposure was a substantial factor in causing the plaintiff's injury." Tragarz v. Keene Corp., 980 F.2d 411, 425 (7th Cir. 1992)(discussed by Gregg court in setting out the product identification criteria in Pennsylvania).

In two more recent decisions, the Superior Court of Pennsylvania has reiterated the Gregg holding that "[t]he frequency, regularity and proximity test is not a rigid test with an absolute threshold necessary to support liability," and that application of the test "should be tailored to the facts and circumstances of the case; for example, its application should become 'somewhat less critical' where the plaintiff puts forth specific evidence of exposure to a defendant's product." Linster v. Allied Signal, Inc., 21 A.3d 220, 223-24 (Pa. Super. 2011); Howard v. A.W. Chesterton Co., 31 A.3d 974, 979 (Pa. Super.

2011). Linster and Howard have each further clarified that "the frequency and regularity prongs become less cumbersome when dealing with cases involving diseases, like mesothelioma, which can develop after only minor exposures to asbestos fibers." Id. However, the Supreme Court of Pennsylvania has made clear that a plaintiff cannot establish substantial factor causation merely by putting forth expert testimony opining that "each and every breath" of asbestos (or inhalation of a single or de minimis number of asbestos fibers) can cause injury. Betz v. Pneumo Abex, LLC, 615 Pa. 504, 547-554, 44 A.3d 27, 54-58 (Pa. 2012); Howard ex rel. Estate of Ravert v. A.W. Chesterton Co., 621 Pa. 343, 348, 78 A.3d 605, 607 (Pa. 2013); see also Gregg, 943 A.2d at 226 (referring to the "each and every exposure" theory as "a fiction"); but see Rost v. Ford Motor Co., – A.3d – , 2014 WL 5800550 (Pa. Nov. 6, 2014) (granting allocatur regarding "[w]hether – contrary to Howard, Betz, and Gregg – a plaintiff in an asbestos action may satisfy the burden of establishing substantial-factor causation by an expert's 'cumulative-exposure' theory that the expert concedes is simply an 'any-exposure' theory by a different name").

## II. Defendant Crown Cork's Motion for Summary Judgment

### A. Defendant's Arguments

Exposure / Causation

Defendant contends that Plaintiffs' evidence is insufficient to establish that any product for which it is responsible caused the illness at issue.

### B. Plaintiffs' Arguments

Pennsylvania's "Crown Cork Bailout Statute"

Plaintiffs anticipate in their opposition brief that Defendant will rely upon, 15 Pa.C.S.A. § 1929.1, which Plaintiffs refer to as the "Crown Cork Bailout Statute." Plaintiffs contend that the Court should not apply this statute because it violates (1) the Pennsylvania state constitution, and (2) various provisions of the United States constitution, including the dormant commerce clause, and the equal protection clause.

4

Exposure / Causation

Plaintiffs contend that they have identified sufficient product identification/causation evidence to survive summary judgment. In support of this assertion, they cite to the following evidence, which is summarized in pertinent part as follows:

- Deposition of Plaintiff
  Mr. Kilgore testified that he worked at the PP&L plant in the late 1940s and 1950s, and that he worked on both the water and steam sides of the plant, with GE and CBS equipment respectively. He explained that he did general maintenance work while working on the steam (or dry) side of the facility, and that there were "a lot of steam lines" there. He testified that he was present when GE repaired one of the generators at the plant. He testified that there were Westinghouse generators at the plant. When asked if he had worked on a Westinghouse generator or was present when others did, he answered "no" to both questions. When asked if he believed he was exposed to asbestos at PP&L and whether he was present when insulation was disturbed, he answered "no" to both questions.

  (Pl. Ex. A, Doc. No. 405.)

- Various Mundet-Related Documents
  Plaintiffs point to various documents that they contend establish that (1) all of the insulation used on the boiler installed at the facility in 1955 was provided by Mundet, and (2) Mundet used asbestos-containing insulation to complete this work.

  (Pl. Exs. B-C, E-F, Doc. Nos. 405 and 405-1.)

- Various GE-Related Documents
  In connection with other Defendants' motions, Plaintiffs point to various documents that they contend establish that (1) during the

5

relevant time period GE required external
asbestos insulation on all of its turbines,
generators, and other electrical equipment,
(2) GE supplied the turbines for the USS
Wrangell, (3) in 1951, GE was contracted to
remove and replace the external insulation on
the turbines on the ship.

(Pl. Exs. D-H, Doc. Nos. 406 through 406-2.)

• Various CBS-Related Documents
In connection with other Defendants' motions,
Plaintiffs point to various documents that
they contend establish that (1) during the
relevant time period Westinghouse required
external asbestos insulation on all of its
turbines, generators, and blowers, (2)
Westinghouse supplied some of the turbines
and some of the blowers for the USS Navarro,
and (3) in 1952 (during Mr. Kilgore's work
aboard the ship), the external insulation on
the turbines was removed and replaced.

(Pl. Exs. B-I, Doc. Nos. 403 through 403-2.)

## C. Analysis

Plaintiffs allege that Mr. Kilgore was exposed to
asbestos from external insulation supplied by Mundet, a
predecessor of Defendant Crown Cork, and used at the Holtwood
PP&L plant. Plaintiffs provide evidence that Mr. Kilgore did
general maintenance work while working on the steam (or dry) side
of the PP&L plant, and that there were "a lot of steam lines"
there. They present evidence that they contend establishes that
all of the insulation used on the boiler installed at the
facility in 1955 was provided by Mundet and contained asbestos.
They provide evidence that he was present when GE repaired one of
the generators at the plant, and that there was a Westinghouse
generator at the facility. They also provide evidence that GE and
Westinghouse called for external asbestos insulation to be used
with its equipment. Importantly, however, there is no evidence
that Mr. Kilgore was exposed to any respirable dust from
insulation used with this equipment – including during the repair
work on the GE generator – or any other insulation supplied by
Defendant's predecessor. In fact, when asked if he believed he
was exposed to asbestos at PP&L and whether he was present when

6

E.D. Pa. No. 2:13-04029-ER          **AND IT IS SO ORDERED.**

_[signature]_

**EDUARDO C. ROBRENO, J.**

--------------------

insulation was disturbed, Mr. Kilgore answered "no" to both
questions. As such, no reasonable jury could conclude from the
evidence that Mr. Kilgore was exposed to respirable asbestos from
Defendant's insulation such that it was a substantial factor in
the development of his mesothelioma because any such finding
would be based on conjecture. See Gregg, 943 A.2d at 225-26;
Linster, 21 A.3d at 223-24; Howard, 31 A.3d at 979. Accordingly,
summary judgment in favor of Defendant is warranted. Anderson,
477 U.S. at 248-50.

        In light of this determination, the Court need not
reach Plaintiffs' challenge to the "Crown Cork Bailout Statute."

**D.    Conclusion**

        Summary judgment in favor of Defendant is granted
because Plaintiffs have failed to identify sufficient evidence of
product identification/causation to support their claims against
it.

7