IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTOR B. KILGORE, ET AL., | : | CONSOLIDATED UNDER |
| | : | MDL 875 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ALLEN-BRADLEY COMPANY, | : | E.D. PA CIVIL ACTION NO. |
| ET AL., | : | 2:13-04029-ER |
| | : | |
| Defendants. | : | |

FILED
NOV 12 2014
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## O R D E R

**AND NOW**, this **12th** day of **November, 2014**, it is hereby **ORDERED** that the Motion for Summary Judgment of Defendant CBS Corporation (Doc. Nos. 393 and 396) is **GRANTED**.[1]

---

[1]    This case was removed in July of 2013 from the Court of Common Pleas of Philadelphia to the United States District Court for the Eastern District of Pennsylvania as part of MDL-875.

   Plaintiffs allege that Victor Kilgore ("Plaintiff" or "Mr. Kilgore") was exposed to asbestos while working at the PP&L plant in Holtwood, Pennsylvania during the period 1950 to 1956, and while serving in the U.S. Navy, beginning in 1956. Plaintiffs allege that Defendant CBS Corporation, a successor to Westinghouse ("CBS" or "Westinghouse"), manufactured turbines, generators, and blowers. The alleged asbestos exposure pertinent to Defendant occurred at the Holtwood PP&L, and aboard various ships.

   Plaintiffs assert that Mr. Kilgore developed mesothelioma as a result of exposure to external insulation used in connection with Defendant's products. He was deposed in June of 2013.

   Plaintiffs brought claims against various defendants. Defendant has moved for summary judgment, arguing that (1) there is insufficient evidence to establish causation with respect to its product(s), (2) it is entitled to summary judgment on grounds of the bare metal defense, (3) it is immune from liability for exposure aboard ships by way of the government contractor defense, (4) it is entitled to summary judgment on land-based claims on grounds of the Pennsylvania statute of repose.

The parties assert that maritime law applies to certain of Plaintiffs' alleged exposures and that Pennsylvania law applies to others.

II. **Legal Standard**

A. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

B. The Applicable Law

1. Government Contractor Defense (Federal Law)

Defendant's motion for summary judgment on the basis of the government contractor defense is governed by federal law. In matters of federal law, the MDL transferee court applies the law of the circuit where it sits, which in this case is the law of the U.S. Court of Appeals for the Third Circuit. Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 362-63 (E.D. Pa. 2009)(Robreno, J.).

2

2. State Law Issues (Maritime versus State Law)

The parties assert that maritime law applies to certain of Plaintiffs' exposures, and that Pennsylvania law applies to others. In instances where there are distinct periods of exposure (e.g., land-based exposure in two different jurisdictions, or different types of exposure (such as sea-based versus land-based)), the Court may apply two different laws to the different periods of exposure. See, e.g., Lewis v. Asbestos Corp., Ltd., No. 10-64625, 2011 WL 5881184, at *1 n.1 (E.D. Pa. Aug. 2, 2011)(Robreno, J.)(applying Alabama state law to period of land-based exposure and maritime law to period of sea-based exposure).

i) Ship-Based Exposures (Maritime Law)

Whether maritime law is applicable is a threshold dispute that is a question of federal law, see U.S. Const. Art. III, § 2; 28 U.S.C. § 1333(1), and is therefore governed by the law of the circuit in which this MDL court sits. See Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009)(Robreno, J.). This court has previously set forth guidance on this issue. See Conner v. Alfa Laval, Inc., 799 F. Supp. 2d 455 (E.D. Pa. 2011)(Robreno, J.).

In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. Id. at 463-66 (discussing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995)). The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters. Id. In assessing whether work was on "navigable waters" (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters. See Sisson v. Ruby, 497 U.S. 358 (1990). This Court has previously clarified that this includes work aboard a ship that is in "dry dock." See Deuber v. Asbestos Corp. Ltd., No. 10-78931, 2011 WL 6415339, at *1 n.1 (E.D. Pa. Dec. 2, 2011)(Robreno, J.)(applying maritime law to ship in "dry dock" for overhaul). By contrast, work performed in other areas of the shipyard or on a dock, (such as work performed at a machine shop in the shipyard, for example, as was the case with the Willis plaintiff discussed in Conner) is land-based work. The connection test requires that the incident could have "'a potentially disruptive impact on maritime commerce,'" and that "'the general character' of the 'activity giving rise to the incident' shows a

'substantial relationship to traditional maritime activity.'" Grubart, 513 U.S. at 534 (citing Sisson, 497 U.S. at 364, 365, and n.2).

### Locality Test

If a service member in the Navy performed some work at shipyards (on land) or docks (on land) as opposed to onboard a ship on navigable waters (which includes a ship docked at the shipyard, and includes those in "dry dock"), "the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." Conner, 799 F. Supp. 2d at 466; Deuber, 2011 WL 6415339, at *1 n.1. If, however, the worker never sustained asbestos exposure onboard a vessel on navigable waters, then the locality test is not met and state law applies.

### Connection Test

When a worker whose claims meet the locality test was primarily sea-based during the asbestos exposure, those claims will almost always meet the connection test necessary for the application of maritime law. Conner, 799 F. Supp. 2d at 467-69 (citing Grubart, 513 U.S. at 534). This is particularly true in cases in which the exposure has arisen as a result of work aboard Navy vessels, either by Navy personnel or shipyard workers. See id. But if the worker's exposure was primarily land-based, then, even if the claims could meet the locality test, they do not meet the connection test and state law (rather than maritime law) applies. Id.

Some of the alleged exposures pertinent to Defendant occurred aboard ships (including ships in "dry dock"). Therefore, these exposures were during sea-based work. See Conner, 799 F. Supp. 2d 455; Deuber, 2011 WL 6415339, at *1 n.1. Accordingly, maritime law is applicable to Plaintiffs' claims against Defendant arising from alleged asbestos exposure aboard ships. See id. at 462-63.

### ii) Land-Based Exposures (Pennsylvania Law)

Some of the alleged exposures pertinent to Defendant occurred on land (including take-home exposure arising from his father's work) in Pennsylvania. Therefore, the Court will apply

4

Pennsylvania law to Plaintiffs' claims against Defendant arising from alleged asbestos exposure that occurred on land in Pennsylvania. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); see also Guaranty Trust Co. v. York, 326 U.S. 99, 108 (1945).

### C. Bare Metal Defense Under Maritime Law

This Court has held that the so-called "bare metal defense" is recognized by maritime law, such that a manufacturer has no liability for harms caused by – and no duty to warn about hazards associated with – a product it did not manufacture or distribute. Conner v. Alfa Laval, Inc., 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012)(Robreno, J.).

### D. Product Identification/Causation Under Maritime Law

In order to establish causation for an asbestos claim under maritime law, a plaintiff must show, for each defendant, that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." Lindstrom v. A-C Prod. Liab. Trust, 424 F.3d 488, 492 (6th Cir. 2005); citing Stark v. Armstrong World Indus., Inc., 21 F. App'x 371, 375 (6th Cir. 2001). This Court has also noted that, in light of its holding in Conner, 842 F. Supp. 2d 791, there is also a requirement (implicit in the test set forth in Lindstrom and Stark) that a plaintiff show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. Abbay v. Armstrong Int'l., Inc., No. 10-83248, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012)(Robreno, J.).

Substantial factor causation is determined with respect to each defendant separately. Stark, 21 F. App'x. at 375. In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time. Id. at 376 (quoting Harbour v. Armstrong World Indus., Inc., No. 90-1414, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)).

A mere "minimal exposure" to a defendant's product is insufficient to establish causation. Lindstrom, 424 F.3d at 492. "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." Id. Rather, the plaintiff must show "'a high enough level of exposure

5

that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" Id. (quoting Harbour, 1991 WL 65201, at *4). The exposure must have been "actual" or "real", but the question of "substantiality" is one of degree normally best left to the fact-finder. Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 851 (3d Cir. 1995). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict products liability." Stark, 21 F. App'x at 376 (citing Matthews v. Hyster Co., Inc., 854 F.2d 1166, 1168 (9th Cir. 1988)(citing Restatement (Second) of Torts, § 402A (1965))).

### E. Product Identification/Causation Under Pennsylavnia Law

Under Pennsylvania law, a plaintiff must establish, as a threshold matter, "that [his or her] injuries were caused by a product of the particular manufacturer or supplier." Eckenrod v. GAF Corp., 375 Pa. Super. 187, 544 A.2d 50, 52 (Pa. Super. Ct. 1988)(citing Wible v. Keene Corp., No. 86-4451, 1987 WL 15833 at *1 (E.D. Pa. Aug.19, 1987)(in order to defeat defendant's motion, plaintiff must present evidence showing that he or she was exposed to an asbestos product supplied by defendant)). Beyond this initial requirement, a plaintiff must further establish that the plaintiff was exposed to a certain defendant's product with the necessary frequency and regularity, and in close enough proximity to the product, to create a genuine issue of material fact as to whether that specific product was a substantial factor (and thus the proximate cause) of Plaintiff's asbestos related condition. Eckenrod, 544 A.2d at 52-53.

In addition to articulating the "frequency, regularity and proximity" standard, Eckenrod also held that "the mere fact that appellees' asbestos products came into the facility does not show that the decedent ever breathed these specific asbestos products or that he worked where these asbestos products were delivered." Id. at 53. Gregg v. VJ Auto Parts, Co., 596 Pa. 274, 943 A.2d 216 (Pa. 2007), further upheld the discretion of the trial court in evaluating the evidence to be presented at the trial stage, ruling that, "we believe it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in light of the evidence concerning frequency, regularity, and proximity of a plaintiff's ... asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury." Id. at 227.

6

The Gregg court adopted a fact sensitive approach regarding the sufficiency of product identification evidence. Id. at 225. Moreover, "the plaintiff's exposure to each defendant's product should be independently evaluated when determining if such exposure was a substantial factor in causing the plaintiff's injury." Tragarz v. Keene Corp., 980 F.2d 411, 425 (7th Cir. 1992)(discussed by Gregg court in setting out the product identification criteria in Pennsylvania).

In two more recent decisions, the Superior Court of Pennsylvania has reiterated the Gregg holding that "[t]he frequency, regularity and proximity test is not a rigid test with an absolute threshold necessary to support liability," and that application of the test "should be tailored to the facts and circumstances of the case; for example, its application should become 'somewhat less critical' where the plaintiff puts forth specific evidence of exposure to a defendant's product." Linster v. Allied Signal, Inc., 21 A.3d 220, 223-24 (Pa. Super. 2011); Howard v. A.W. Chesterton Co., 31 A.3d 974, 979 (Pa. Super. 2011). Linster and Howard have each further clarified that "the frequency and regularity prongs become less cumbersome when dealing with cases involving diseases, like mesothelioma, which can develop after only minor exposures to asbestos fibers." Id. However, the Supreme Court of Pennsylvania has made clear that a plaintiff cannot establish substantial factor causation merely by putting forth expert testimony opining that "each and every breath" of asbestos (or inhalation of a single or de minimis number of asbestos fibers) can cause injury. Betz v. Pneumo Abex, LLC, 615 Pa. 504, 547-554, 44 A.3d 27, 54-58 (Pa. 2012); Howard ex rel. Estate of Ravert v. A.W. Chesterton Co., 621 Pa. 343, 348, 78 A.3d 605, 607 (Pa. 2013); see also Gregg, 943 A.2d at 226 (referring to the "each and every exposure" theory as "a fiction"); but see Rost v. Ford Motor Co., – A.3d – , 2014 WL 5800550 (Pa. Nov. 6, 2014) (granting allocatur regarding "[w]hether — contrary to Howard, Betz, and Gregg — a plaintiff in an asbestos action may satisfy the burden of establishing substantial-factor causation by an expert's 'cumulative-exposure' theory that the expert concedes is simply an 'any-exposure' theory by a different name").

### III. Defendant CBS's Motion for Summary Judgment

#### A. Defendant's Arguments

7

Product Identification / Causation

Defendant contends that Plaintiffs' evidence is insufficient to establish that any product for which it is responsible caused the illness at issue.

Bare Metal Defense

Defendant asserts that it has no duty to warn about and cannot be liable for injury arising from any product or component part that it did not manufacture or supply.

Government Contractor Defense (Navy Ship-Based Exposures)

Defendant asserts the government contractor defense, arguing that it is immune from liability for any alleged asbestos exposure that occurred aboard Navy ships because the Navy exercised discretion and approved the warnings supplied by Defendant for the products at issue, Defendant provided warnings that conformed to the Navy's approved warnings, and the Navy knew about asbestos and its hazards.

Statute of Repose (Land-Based Exposures)

Defendant asserts that Plaintiffs' claims arising from land-based asbestos exposure in Pennsylvania (i.e., claims governed by Pennsylvania law) are barred by Pennsylvania's statute of repose because the generator at issue was an improvement to real property that was installed more than 12 years prior to the filing of the instant lawsuit.

**B. Plaintiffs' Arguments**

Product Identification / Causation / Bare Metal Defense

Plaintiffs contend that they have identified sufficient product identification/causation evidence to survive summary judgment. In support of this assertion, they cite to the following evidence, summarized in pertinent part as follows:

- Depositions of Plaintiff
  Mr. Kilgore testified that he worked at the PP&L plant in the late 1940s and 1950s. He

testified that there were Westinghouse generators at the plant. When asked if he believed he was exposed to asbestos at PP&L and whether he was present when insulation was disturbed, he answered "no" to both questions. When asked if he had worked on a Westinghouse generator or was present when others did, he answered "no" to both questions.

With respect to his Navy service, he testified that, for several years, beginning in 1951, he worked aboard the USS Navarro, and was present as a laborer in the shipyard when it was overhauled. He testified that he was exposed to respirable asbestos dust from insulation on blowers on the USS Navarro. He also testified that insulation was all over throughout the ship and in the room(s) in which the Westinghouse generators, turbines, and blowers were located. He later served on the USS Wrangell in the boiler room, near the turbines.

(Pl. Exs. A, F, and J, Doc. Nos. 403, 403-1, and 403-2.)

- Various Documents
  Plaintiffs point to various documents that they contend establish that (1) during the relevant time period Westinghouse required external asbestos insulation on all of its turbines, generators, and blowers, (2) Westinghouse supplied some of the turbines and some of the blowers for the USS Navarro, (3) in 1952 (during Mr. Kilgore's work aboard the USS Navarro), the external insulation on the turbines was removed and replaced, (4) in 1955, Westinghouse representatives supervised work on the Westinghouse turbines on the ship.

  (Pl. Exs. B-I, Doc. Nos. 403 through 403-2.)

9

### Government Contractor Defense (Navy Ship-Based Exposures)

Plaintiffs argue that summary judgment in favor of Defendant on grounds of the government contractor defense is not warranted because there are genuine issues of material fact regarding its availability to Defendant. Plaintiffs cite to expert testimony of Arthur Faherty, which they contend establishes that the Navy did not prohibit Defendant from providing warnings with its products and, instead, required such warnings.

### Statute of Repose (Land-Based Exposures)

Plaintiffs contend that the Pennsylvania statute of repose is not applicable because the generator (and any other equipment) at issue was not an improvement to real property – and was instead personalty. Plaintiffs cite to numerous cases to support this assertion.

**C. Analysis**

Plaintiffs allege that Mr. Kilgore was exposed to asbestos from external insulation used in connection with various pieces of Westinghouse equipment (including turbines and blowers on ships and a generator at PP&L). The Court considers the evidence pertinent to each set of claims separately:

(i) <u>Ship-Based Exposures (Maritime Law)</u>

Plaintiffs allege that Mr. Kilgore was exposed to asbestos from external insulation used in connection with Westinghouse turbines and blowers. They present evidence that for several years, beginning in 1951, he worked aboard the USS Navarro, and was present as a laborer in the shipyard when it was overhauled. There is evidence that Westinghouse supplied some of the turbines and some of the blowers for the USS Navarro, and that, in 1952 (during Mr. Kilgore's work aboard the USS Navarro), the external insulation on the turbines was removed and replaced. There is evidence that Mr. Kilgore breathed in respirable asbestos dust from insulation on Westinghouse blowers during this 1952 work. There is also evidence that, in 1955, Westinghouse representatives supervised work on the Westinghouse turbines on the ship. Finally, there is evidence that, during the relevant time period, Westinghouse required external asbestos insulation on all of its turbines and blowers.

Importantly, however, there is no evidence that Westinghouse manufactured or supplied the asbestos insulation to which Mr. Kilgore was exposed - or that he was exposed to respirable asbestos from any product manufactured or supplied by Defendant, or from any work performed by Defendant. As such, no reasonable jury could conclude from the evidence that any product manufactured or supplied by Defendant - or any work performed by Defendant - was a substantial factor in the development of Mr. Kilgore's mesothelioma because any such finding would be based on conjecture. See Lindstrom, 424 F.3d at 492. Accordingly, summary judgment in favor of Defendant is warranted with respect to claims arising from this alleged source of asbestos exposure. Anderson, 477 U.S. at 248-50.

In light of this determination, the Court need not reach Defendant's argument regarding the government contractor defense.

### (ii) Land-Based Exposures (Pennsylvania Law)

Plaintiffs allege that Mr. Kilgore was exposed to asbestos from external insulation used in connection with a Westinghouse generator at the PP&L facility. They provide evidence that there was a Westinghouse generator at the facility. Importantly, however, there is no evidence that he was exposed to any respirable dust from insulation during this work. In fact, when asked if he believed he was exposed to asbestos at PP&L and whether he was present when insulation was disturbed, Mr. Kilgore answered "no" to both questions. When asked if he had worked on a Westinghouse generator or was present when others did, he answered "no" to both questions. As such, no reasonable jury could conclude from Plaintiffs' evidence that any product manufactured or supplied by Defendant - or any work performed by Defendant - was a substantial factor in the development of Mr. Kilgore's mesothelioma because any such finding would be based on conjecture. See Gregg, 943 A.2d at 225-26; Linster, 21 A.3d at 223-24; Howard, 31 A.3d at 979. Accordingly, summary judgment in favor of Defendant is warranted with respect to claims arising from this alleged source of asbestos exposure. Anderson, 477 U.S. at 248-50.

In light of this determination, the Court need not reach Defendant's argument regarding the Pennsylvania statute of repose.

E.D. Pa. No. 2:13-04029-ER    **AND IT IS SO ORDERED.**

_____
EDUARDO C. ROBRENO, J.

D.  **Conclusion**

   Summary judgment in favor of Defendant is granted with respect to all of Plaintiff's claims against it because Plaintiffs have failed to identify sufficient evidence of product identification/causation to support any of those claims.

12