IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTOR B. KILGORE, ET AL., | : | CONSOLIDATED UNDER |
| | : | MDL 875 |
| Plaintiffs, | : | |
| | : | FILED |
| v. | : | NOV 12 2014 |
| | : | |
| ALLEN-BRADLEY COMPANY, | : | E.D. PA CIVIL ACTION NO. |
| ET AL., | : | 2:13-04029-ER |
| | : | |
| Defendants. | : | |

## O R D E R

**AND NOW**, this **12th** day of **November, 2014**, it is hereby

**ORDERED** that the Motion for Summary Judgment of Defendant PP&L

Corporation (Doc. No. 394) is **GRANTED**.[1]

---

[1] This case was removed in July of 2013 from the Court of Common Pleas of Philadelphia to the United States District Court for the Eastern District of Pennsylvania as part of MDL-875.

Plaintiffs allege that Victor Kilgore ("Plaintiff" or "Mr. Kilgore") was exposed to asbestos while, inter alia, working at the PP&L plant in Holtwood, Pennsylvania during the period 1950 to 1956. Defendant PP&L Corporation ("PP&L") was Plaintiff's employer and the owner of the premises on which Plaintiff worked at the Holtwood PP&L plant.

Plaintiffs assert that Mr. Kilgore developed mesothelioma as a result of exposure to external insulation used in connection with various products at Defendant's plant. He was deposed in June of 2013 and died in July of 2013. Although Plaintiffs mention in connection with another motion that Mr. Kilgore was exposed to asbestos at the plant both as a result of his own work there and from asbestos brought home on his father's clothes, Plaintiffs make clear in their opposition to PP&L's motion that the claims against PP&L are solely based on Mr. Kilgore's own exposure (and not take-home exposure).

Plaintiffs brought claims against various defendants. Defendant has moved for summary judgment, arguing that there is insufficient admissible evidence to establish any exposure for which it can be liable.

The parties agree that Pennsylvania law applies.

**I. Legal Standard**

   A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." <u>Am. Eagle Outfitters v. Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." <u>Pignataro v. Port Auth. of N.Y. & N.J.</u>, 593 F.3d 265, 268 (3d Cir. 2010) (citing <u>Reliance Ins. Co. v. Moessner</u>, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250.

   B. <u>The Applicable Law</u>

The parties agree that Plaintiffs' claims against Defendant are governed by Pennsylvania law. Therefore, the Court will apply Pennsylvania law in deciding Defendant's motion for summary judgment. See <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938); see also <u>Guaranty Trust Co. v. York</u>, 326 U.S. 99, 108 (1945).

   C. <u>Exposure/Causation Under Pennsylavnia Law</u>

Under Pennsylvania law, a plaintiff must establish, as a threshold matter, "that [his or her] injuries were caused by a

2

product of the particular manufacturer or supplier." Eckenrod v. GAF Corp., 375 Pa. Super. 187, 544 A.2d 50, 52 (Pa. Super. Ct. 1988)(citing Wible v. Keene Corp., No. 86-4451, 1987 WL 15833 at *1 (E.D. Pa. Aug.19, 1987)(in order to defeat defendant's motion, plaintiff must present evidence showing that he or she was exposed to an asbestos product supplied by defendant)). Beyond this initial requirement, a plaintiff must further establish that the plaintiff was exposed to a certain defendant's product with the necessary frequency and regularity, and in close enough proximity to the product, to create a genuine issue of material fact as to whether that specific product was a substantial factor (and thus the proximate cause) of Plaintiff's asbestos related condition. Eckenrod, 544 A.2d at 52-53.

In addition to articulating the "frequency, regularity and proximity" standard, Eckenrod also held that "the mere fact that appellees' asbestos products came into the facility does not show that the decedent ever breathed these specific asbestos products or that he worked where these asbestos products were delivered." Id. at 53. Gregg v. VJ Auto Parts, Co., 596 Pa. 274, 943 A.2d 216 (Pa. 2007), further upheld the discretion of the trial court in evaluating the evidence to be presented at the trial stage, ruling that, "we believe it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in light of the evidence concerning frequency, regularity, and proximity of a plaintiff's ... asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury." Id. at 227.

The Gregg court adopted a fact sensitive approach regarding the sufficiency of product identification evidence. Id. at 225. Moreover, "the plaintiff's exposure to each defendant's product should be independently evaluated when determining if such exposure was a substantial factor in causing the plaintiff's injury." Tragarz v. Keene Corp., 980 F.2d 411, 425 (7th Cir. 1992)(discussed by Gregg court in setting out the product identification criteria in Pennsylvania).

In two more recent decisions, the Superior Court of Pennsylvania has reiterated the Gregg holding that "[t]he frequency, regularity and proximity test is not a rigid test with an absolute threshold necessary to support liability," and that application of the test "should be tailored to the facts and circumstances of the case; for example, its application should become 'somewhat less critical' where the plaintiff puts forth

3

specific evidence of exposure to a defendant's product." Linster v. Allied Signal, Inc., 21 A.3d 220, 223-24 (Pa. Super. 2011); Howard v. A.W. Chesterton Co., 31 A.3d 974, 979 (Pa. Super. 2011). Linster and Howard have each further clarified that "the frequency and regularity prongs become less cumbersome when dealing with cases involving diseases, like mesothelioma, which can develop after only minor exposures to asbestos fibers." Id. However, the Supreme Court of Pennsylvania has made clear that a plaintiff cannot establish substantial factor causation merely by putting forth expert testimony opining that "each and every breath" of asbestos (or inhalation of a single or de minimis number of asbestos fibers) can cause injury. Betz v. Pneumo Abex, LLC, 615 Pa. 504, 547-554, 44 A.3d 27, 54-58 (Pa. 2012); Howard ex rel. Estate of Ravert v. A.W. Chesterton Co., 621 Pa. 343, 348, 78 A.3d 605, 607 (Pa. 2013); see also Gregg, 943 A.2d at 226 (referring to the "each and every exposure" theory as "a fiction"); but see Rost v. Ford Motor Co., - A.3d - , 2014 WL 5800550 (Pa. Nov. 6, 2014) (granting allocatur regarding "[w]hether – contrary to Howard, Betz, and Gregg – a plaintiff in an asbestos action may satisfy the burden of establishing substantial-factor causation by an expert's 'cumulative-exposure' theory that the expert concedes is simply an 'any-exposure' theory by a different name").

## II. Defendant PP&L's Motion for Summary Judgment

### A. Defendant's Arguments

Motion to Strike

Defendant asserts that the deposition testimony of Mr. Kilgore is inadmissible because it was not notified of the deposition, was not present at the deposition, and was not even named as a defendant in the action until approximately eight months after Mr. Kilgore passed away. As such, it did not have the opportunity to cross-examine Mr. Kilgore, and it therefore contends that Plaintiffs may not use his deposition testimony against it.

Exposure / Causation

Defendant contends that Plaintiffs' evidence is insufficient to establish that any product for which it is responsible caused the illness at issue.

4

### B. Plaintiffs' Arguments

Motion to Strike

Plaintiffs contend that the deposition testimony of Mr. Kilgore is admissible pursuant to Rule 804(b) of the Federal Rules of Evidence because (1) it was, in essence, a dying declaration, and (2) other defendants (GE, CBS, and Crown Cork & Seal Company) present at the deposition had the some motive to cross-examine Mr. Kilgore that Defendant PP&L has. Plaintiffs explain that PP&L was not named as a defendant in the action until March of 2014 (approximately eight months after Mr. Kilgore passed away) – and, thus, not notified of the deposition – because it was not until a subsequent decision of the Pennsylvania Supreme Court (Tooey v. AK Steel Corp., 81 A.3d 851 (Pa. 2013)) that employers such as PP&L could face liability despite the Pennsylvania Workers' Compensation statute. As such, Plaintiffs assert they did not have reason to include PP&L as a defendant until after Mr. Kilgore had already been deposed and passed away.

Exposure / Causation

Plaintiffs contend that they have identified sufficient product identification/causation evidence to survive summary judgment. In support of this assertion, they cite to the following evidence (much of which is incorporated by Plaintiffs by way of reference to their briefs in opposition to the motions of GE, CBS, and Crown Cork & Seal), which is summarized in pertinent part as follows:

- Depositions of Plaintiff
  Mr. Kilgore testified that he worked at the PP&L plant in the late 1940s and 1950s, and that he worked on both the water and steam sides of the plant, with GE and CBS equipment respectively. He testified that he was present when GE repaired one of the generators at the plant. He testified that there were Westinghouse generators at the plant. When asked if he had worked on a Westinghouse generator or was present when others did, he answered "no" to both questions. When asked if he believed he was exposed to asbestos at PP&L and whether he

5

was present when insulation was disturbed, he answered "no" to both questions.

(Pl. Ex. A, Doc. No. 407; Pl. Exs. B and C, Doc. No. 406; Pl. Exs. A, F, and J, Doc. Nos. 403, 403-1, and 403-2.)

- Various GE-Related Documents
  Plaintiffs point to various documents that they contend establish that (1) during the relevant time period GE required external asbestos insulation on all of its turbines, generators, and other electrical equipment, (2) GE supplied the turbines for the USS Wrangell, (3) in 1951 (prior to Mr. Kilgore's work aboard the USS Wrangell), GE was contracted to remove and replace (i.e., GE supplied) the external insulation on the turbines on the ship.

  (Pl. Exs. D-H, Doc. Nos. 406 through 406-2.)

- Various CBS-Related Documents
  Plaintiffs point to various documents that they contend establish that (1) during the relevant time period Westinghouse required external asbestos insulation on all of its turbines, generators, and blowers, (2) Westinghouse supplied some of the turbines and some of the blowers for the USS Navarro, (3) in 1952 (during Mr. Kilgore's work aboard the USS Navarro), the external insulation on the turbines was removed and replaced, (4) in 1955, Westinghouse representatives supervised work on the Westinghouse turbines on the ship.

  (Pl. Exs. B-I, Doc. Nos. 403 through 403-2.)

## C. Analysis

Plaintiffs allege that Mr. Kilgore was exposed to asbestos from external insulation used in connection with various pieces of General Electric and Westinghouse equipment, which were insulated with asbestos provided by Mundet, a predecessor of

6

E.D. Pa. No. 2:13-04029-ER     **AND IT IS SO ORDERED.**

/s/ *signature*
EDUARDO C. ROBRENO, J.

---

Crown Cork & Seal. Even assuming that Mr. Kilgore's deposition testimony is admissible and may be used against Defendant PP&L (an issue the Court need not reach), Plaintiffs' evidence is insufficient to support their claims against PP&L. The analysis of that evidence is set forth below:

    Plaintiffs provide evidence that Mr. Kilgore was present when GE repaired one of the generators at the plant, and that there was a Westinghouse generator at the facility. They also provide evidence that GE and Westinghouse called for external asbestos insulation to be used with its equipment. Importantly, however, there is no evidence that Mr. Kilgore was exposed to any respirable dust from insulation used with this equipment - including during the repair work on the GE generator. In fact, when asked if he believed he was exposed to asbestos at PP&L and whether he was present when insulation was disturbed, Mr. Kilgore answered "no" to both questions. As such, no reasonable jury could conclude from Plaintiffs' evidence that Mr. Kilgore was exposed to any respirable asbestos at the PP&L plant such that it was a substantial factor in the development of his mesothelioma because any such finding would be based on conjecture. See Gregg, 943 A.2d at 225-26; Linster, 21 A.3d at 223-24; Howard, 31 A.3d at 979. Accordingly, summary judgment in favor of Defendant is warranted. Anderson, 477 U.S. at 248-50.

    In light of this determination, the Court need not reach Defendant's motion to strike Plaintiff's deposition testimony.

### D. Conclusion

    Summary judgment in favor of Defendant is granted because Plaintiffs have failed to identify sufficient evidence of exposure/causation to support their claims against it.